James **HARTLEY** and Priscilla Hartley, Plaintiffs,

v.

**PETER KIEWIT SONS' CO.,** Defendant.

James N. **HARTLEY,** Plaintiff,

v.

**HOME INDEMNITY COMPANY,** Defendant.

Nos. 80 CV 3008, 81 CV 1497.

United States District Court, E. D. New York.

July 16, 1982.

Skoy & Lowell, Mineola, N. Y. by Elliot B. Lowell, Robert L. Pryor, Mineola, N. Y., for plaintiffs.

McHugh, Leonard & O'Conor, New York City by James M. Hazen, New York City, for defendants.

NEAHER, District Judge.

These consolidated actions seek recovery for personal injuries sustained by plaintiff James Hartley ("Hartley") during the course of his employment with defendant Peter Kiewit Sons' Co. ("Kiewit"). In the first action, No. 80–3008, Hartley and his wife assert claims under the Jones Act, 46 U.S.C. § 688,[1] against Kiewit for Hartley's bodily injury, loss of earnings and medical expenses. Jurisdiction for the second action, No. 81–1497, is also asserted under the Jones Act, but the claim is of an entirely different nature. In the latter action, Hartley alleges that defendant Home Indemnity Company ("Home"), Kiewit's workers' compensation insurance carrier, has fully paid plaintiff the State benefits administratively awarded under the New York Workers' Compensation Law, but that Home has refused to recognize plaintiff's subsequent demand for additional benefits allegedly due under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901–950. Hartley seeks damages in the amount of the federal benefits allegedly withheld.

Defendants do not dispute the nature or extent of Hartley's injury; however, they presently move for summary judgment dis-

---

1. "§ 688. Recovery for injury to or death of seaman

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

missing the complaints, F.R.Civ.P. 56(b), on the ground that Hartley's injury is covered by neither the Jones Act nor LHWCA. The undisputed facts as established by the pleadings and Hartley's pretrial deposition testimony follow.

Hartley, 31 years old, is a member of the dock-builders union, and although he performed no underwater work for Kiewit, the union classifies him as a "diver." He commenced employment with Kiewit on or about January 24, 1980 as a dockworker in the construction of the Troy-Green Island Narrows Bridge on the Hudson River at Troy, New York. On or about February 7, 1980, Hartley was struck in the face by a steel sling suspended from a derrick while he was engaged in construction of the bridge in the middle of the river. He suffered broken teeth, for which he underwent two medical operations. In accordance with the State Workers' Compensation Law, Home paid Hartley $215.00 per week for his three-month disability period.

On the day of the accident, Hartley and a crew of four others were engaged in attaching prefabricated fender systems [2] to a cofferdam [3] situated about 100 feet off the Troy shore. After using a derrick barge to load the fender systems from the land to a scow,[4] they used the barge's deck winches to move the barge to the cofferdam and then to pull the scow alongside. The scow was then tied to the barge, which was itself "probably" anchored and tied. Dep. at 10. The ultimate task required hoisting individual fender units with the derrick, swinging the units into position and bolting them to the side of the cofferdam. However, during the operation, the foreman noticed that a board was loose on one of the fender systems and directed the crew to use the swinging ball on the derrick to knock the board into place. While holding the ball Hartley was struck in the face by the sling used to hoist the fender systems.

In sum, plaintiff worked for approximately three weeks on construction of a bridge over a navigable waterway, during which time he worked consistently with a derrick barge, and he was injured on a scow attached to the barge, which was anchored mid-river, while endeavoring to attach fenders to a cofferdam.

The recent decisions in *Churchill v. Perini North River Associates*, 652 F.2d 255 (2d Cir. 1981) (*per curiam*), cert. granted sub nom. *Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor v. Perini North River Associates*, 102 S.Ct. 1425, 71 L.Ed.2d 647 (1982), and *Fusco v. Perini North River Associates*, 622 F.2d 1111 (2d Cir. 1980), cert. denied, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981), require summary judgment for defendant Home. *Fusco* involved two claims for compensation under LHWCA for injuries sustained over navigable waters while the claimants were employed as construction workers for the North River Pollution Control Project. On review of the denial of the claims by the Benefit Review Board, the issue before the Court of Appeals was whether the claimants were "employees" within the meaning of § 2(3) of LHWCA, 33 U.S.C. § 902(3), which states:

> "The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworkers including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."

Interpreting *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979), as precluding application of LHWCA

---

**2.** Fender systems are prefabricated units designed to be hung on the side of a structure or vessel to lessen shock or prevent chafing.

**3.** A cofferdam is a watertight enclosure from which the water is pumped to expose the bottom of a body of water and permit the laying of a foundation. Webster's New Int'l Dictionary (2d ed. 1959).

**4.** A scow is a large flat-bottomed vessel chiefly used for transporting freight. *Id.*

where an employee's activities "do not bear a significant relationship to navigation or to commerce on navigable waters," 622 F.2d at 1113, the Court of Appeals held that the claimants' injuries were not covered by LHWCA:

"In the cases at bar the claimants' activities had nothing significant to do with navigation or with commerce on navigable waters. They were engaged exclusively in constructing a sewage disposal plant. It is not significant that the plant was being constructed so that sewage would not cause pollution of navigable waters; nor that the claimants performed part or all of their work while upon floating stages or upon barges. The only sense in which the claimants' activities were maritime was in the sense of their locus. To base a decision upon the locus of work is to found it upon a geographic concept—a foundation precluded by the reasoning in the *Ford* case.

"Parallel reasoning leads us to hold that the claimants were not within the meaning of § 2(3) 'harborworkers.' As there used, the term 'harborworker' does not refer to the place where the employee works but to the activity he performs. To come within § 2(3) a harborworker's activity must relate to ships, as is shown by the test of § 2(3) which refers to a 'harborworker including a ship repairman, shipbuilder, and shipbreaker.'" *Id.*

If *Fusco* alone is insufficient to dispose of the instant LHWCA claim, *Churchill, supra,* which involved the same sewage disposal project, erases any doubt. The claimant there was a dockbuilder foreman and a member of the dockbuilders union for over twenty years. He was injured while supervising work performed on a derrick barge used to carry caissons[5] to the construction site in the North River. Rejecting the claimant's argument that an employee engaged in construction on navigable waters necessarily comes within § 2(3) of LHWCA, the Court of Appeals held that *Fusco* foreclosed Churchill's claim. Although the Su-

preme Court has granted certiorari, the Court of Appeals' decision presently controls the instant claim, which involves circumstances nearly identical to those in *Churchill.*

Turning to Kiewit's motion to dismiss the Jones Act claim for plaintiff's failure to qualify as a "seaman" under the Act, we refer to Judge Wisdom's universally accepted analysis in *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir. 1959):

"[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of his mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." (Footnote omitted.)

See, *e.g., Stafford v. Perini Corp.,* 475 F.2d 507, 510 (1st Cir. 1973); *Baker v. Pacific Far E. Lines, Inc.,* 451 F.Supp. 84, 87 (N.D. Cal.1978); *Mietla v. Warner Co.,* 387 F.Supp. 937 (E.D.Pa.1975); *Wolbert v. City of New York,* 314 F.Supp. 528, 539–40 (E.D. N.Y.1970); *Brinegar v. San Ore Constr. Co.,* 302 F.Supp. 630, 637 (E.D.Ark.1969). See also, *Whittington v. Sewer Constr. Co.,* 541 F.2d 427 (4th Cir. 1976); *Zientek v. Reading Co.,* 220 F.2d 183, 185 (3rd Cir.), *cert. denied,* 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955); 1B Benedict on Admiralty § 11a, at 2–5 (7th ed. rev. 1981).

■■■ Application of the terms "seaman" and "vessel" to the particular circumstances of a case is best left to the trier of fact. *Bernardo v. Bethlehem Steel Co.,* 314 F.2d 604, 608 (2d Cir. 1963); *Offshore Co. v. Robison, supra,* at 779–80; *Savard v. Marine Contracting, Inc.,* 296 F.Supp. 1171,

---

5. A caisson is a huge pipe used for construction work under water. *Churchill v. Perini N. River*

*Assoc., supra,* 652 F.2d at 257, n.2.

1177 (D.Conn.1969), *aff'd on other grounds,* 471 F.2d 536 (2d Cir. 1972), *cert. denied sub nom. Savard v. Perini Corp.,* 412 U.S. 943, 93 S.Ct. 2778, 37 L.Ed.2d 404 (1973). Even where the underlying facts are not in dispute, if conflicting inferences can be drawn, as here, the Court cannot as a matter of law rule that Hartley has or has not met the necessary factual predicates. See *Barrios v. Louisiana Constr. Materials Co.,* 465 F.2d 1157, 1162 (5th Cir. 1972); *Harney v. William M. Moore Bldg. Corp.,* 359 F.2d 649, 654 (2d Cir. 1966); *Bedia v. Ford Motor Co.,* 58 F.R.D. 423, 424–25 (E.D.N.Y.1973). We can only say that the two-prong *Robison* test has been satisfied; hence, Kiewit's motion must be denied.

Accordingly, defendant Home's motion for summary judgment is granted, and plaintiff's complaint is dismissed in *Hartley v. Home Indemnity Co.,* No. 81–1497. The remaining parties are directed to complete all discovery in *Hartley v. Peter Kiewit Sons' Co.,* No. 80–3008, no later than September 30, 1982, and to submit a proposed pretrial order on October 14, 1982. Trial of the action will commence in Courtroom No. 2 on October 18, 1982 at 10:00 a. m.

SO ORDERED.